# Peranteau v. Ferri's Kartway, Inc.

*Liederbach & Eimer,* for plaintiff.

*Power, Bowen & Valimont,* for defendant.

SATTERTHWAITE, J., May 24, 1963.—Plaintiff, in this action for damages for personal injuries alleged to have arisen from defendant's negligence in the conduct of its motor-cart enterprise, has objected to certain written interrogatories propounded to him by defendant. Some of the objections have been obviated by the parties. Thus, plaintiff has withdrawn his objection to interrogatories nos. 10, 21 and 22, and defendant has withdrawn interrogatories nos. 24, 25, 37, 42 and 43. Accordingly, we give no further consideration thereto.

Defendant's first and second interrogatories ask comprehensively for the names and addresses of any persons known to plaintiff to have witnessed, or otherwise to have information concerning the factual circumstances of, the accident and plaintiff's damages resulting therefrom. To these questions, plaintiff has interposed no objection. He does object, however, to the third interrogatory which seeks the identity "of all persons whom you intend to call to testify in your behalf at the trial," specifying whether they were wit-

nesses of the accident and also "the purpose of your calling them to testify."

Inasmuch as this case is still in the early stages and plaintiff may not yet have decided upon whom he will rely as witnesses, and cannot reasonably be expected to make such decision until actual preparations for trial be completed, the objection must be sustained at this time regardless of any other considerations. It is true that Pa. R. C. P. 4007 (a) unequivocally permits discovery of the identity or whereabouts of witnesses, and also that such subject matter is expressly excepted out of the interdiction of Pa. R. C. P. 4011 (d) against compulsory disclosure of information obtained in anticipation of litigation or in preparation for trial. We believe, however, that it would cause unreasonable annoyance and oppression to plaintiff if he be required, at this time, to furnish an enumeration of the witnesses actually to be called to testify: Pa. R. C. P. 4011 (b) ; Ludwig v. Philadelphia Transportation Co., 14 D. & C. 2d 432 (1958) ; Ross v. Lister, 21 D. & C. 2d 51 (1959) ; Dornan v. Johnston, 27 D. & C. 2d 347 (1962). To the extent that Ginsburg v. Lavin, 2 D. & C. 2d 644 (1955), and Wineland v. Pullease, 1 Crawford 209 (1960), may be inconsistent with this conclusion, if in fact they really are inconsistent, we decline to follow them.

At argument, defendant recognized the likelihood of this result, but suggested that it would be entitled to such information eventually and requested the court to designate the appropriate time therefor. This position assumes that the court both can and should lay down certain definite hard and fast guides as a precedent applicable not only to this case but also to others arising in the future. Such premise is unjustified; we neither can nor do attempt to anticipate and control by inflexible fiat all of the various ramifications implicit in the overall problem. In the interest of possibly avoiding further inconclusive jousting in the discovery

arena, however, we do venture the following generalized observations on certain aspects.

In the first place, and disregarding all other considerations for the moment, the practical advantage to the inquiring party of pretrial disclosure of testimonial witnesses of the other, to a large degree is more illusory than real. Considerations of justice and common sense would dictate no justifiable basis for any belief by the inquirer that he may use the same as a trap or tactical technicality whereby he may commit his opponent, in advance, to produce and use all the witnesses so named, and no others, regardless of circumstances or the various developments in the case down to and even including the actual conduct of the trial. Any interpretation of the Rules on this score must have a reasonable application. In no event can the disclosure of witnesses be construed as a guarantee of their production: Ludwig v. Philadelphia Transportation Co., supra. Conversely, while one of the fundamental purposes of all discovery is to reduce the element of surprise as a purely tactical maneuver possibly tending to obscure or confuse the real issues at trial, we can readily perceive of many situations whereby gross injustice would result if a party arbitrarily and inevitably was barred from using witnesses of whose identity, or of the occasion for whose testimony, he would not reasonably have known or anticipated when he had earlier furnished in all good faith the list of those whom he then intended to call. Under such circumstances, other essential witnesses to the merits of his case should not be inexorably precluded by a legalistic procedural device; appropriate safeguards or sanctions may be invoked if real surprise prejudicial to the other side appear at the trial, or if bad faith be shown. The relevant considerations are set forth in Goodrich-Amram §4007 (a)-6, 9; see also the discerning and comprehensive opinion of Judge Flood in Ross v. Lister, supra. Compare the observa-

tions in Poulson v. Gamble, 197 Pa. Superior Ct. 300, 304 (1962), citing the Ludwig and Ross cases with approval.

Subject to the foregoing considerations, we believe that the scope and purpose of Pa. R. C. P. 4007 (a) and 4011 (d) do ordinarily require a party, if demanded by the opponent, to divulge the identity and whereabouts of those witnesses upon whose testimony he in fact really expects and intends to rely, after he has prepared for trial and reasonably in advance thereof, in order to apprise the other of those whose evidence the latter will be actually called upon to meet, and hence to avoid unnecessary, inequitable and obstructionistic problems arising from the unannounced production of "surprise" witnesses at trial, or the totally pointless inconvenience and expense of preparation to meet the potential testimony of known witnesses whom the other side in fact knows it does not intend to call. To the extent that Hill v. Mayusky, 32 Northumb. 35 (1959), and Bystrom v. Sears, Roebuck & Co., 18 D. & C. 2d 300 (1959), indicate that this conclusion is not within the contemplation of Pa. R. C. P. 4007 (a), we disagree. Moreover, since Pa. R. C. P. 4011 (d) expressly excepts the identity and whereabouts of witnesses from the privileged class of information made or secured in anticipation of litigation or preparation for trial, we are not in accord with the reasoning expressed in some of the cases that disclosure of testimonial witnesses (including experts) is obviated by the latter sub-rule. Here again, we endorse Judge Flood's ultimate conclusion in Ross v. Lister, supra, that such information should eventually be revealed before trial.

Finally, and most difficult, there remains the question of when disclosure of intended trial witnesses can properly be expected. In Ross v. Lister, the appropriate deadline was fixed as the time for pretrial conference,

when, under Pa. R. C. P. 212, matters of narrowing the issues, elimination of need for unnecessary proofs, limiting the number of expert witnesses and other preliminary considerations facilitating the ultimate disposition of the case, are to be explored. This result, however, can have practical application only where the pretrial conference system is mandated by local rule and hence part of the procedural routine in every action. It would not be effective or realistic in jurisdictions such as ours in which pretrial conferences are not compulsory and are the exception rather than the rule. In Dornan v. Johnston, supra, decided by the Washington County court where the practice apparently is more analagous to ours, it was held that disclosure of expert witnesses, while ultimately to be required in order to avoid surprise and to give the adversary an opportunity to prepare to challenge their qualifications and meet their opinions, could not be compelled until the case be called for, and both parties report readiness to proceed to trial.

Our practice, however, would probably not render practicable the Washington County solution. As short a time as two weeks may well be the limited period between the call of the list (under our Rule ★264, when for the first time both sides are required to indicate readiness for trial) and the actual trial date itself, and we do not believe this period would be sufficient in many types of cases or as a general proposition. Trial counsel already have frequent difficulty in scheduling the presence of known witnesses, particularly those in the so-called expert category, without also further requiring them at that late date to seek out and arrange for rebuttal witnesses whose presence might well then appear for the first time to be necessary because of the then disclosure of witnesses intended to be availed of by the other side. On the other hand, our Rule ★261 requires that the party ordering

a case on the general trial list shall include a certification in his praecipe that the case is ready for trial. As to him, therefore, if this certification be made in candor, preparation for trial is complete, and it should impose no hardship upon him to disclose his intended testimonial witnesses if requested by the other at that time, subject, of course, to possible modification in good faith by reason of subsequent circumstances in particular cases as hereinabove noted. As to other parties, who may not have completed preparation for trial at that point, this deadline obviously would be unfair and improper; as to them, we cannot suggest any rule-of-thumb, except to note that under our Rule ★263 the sessions trial list is published four weeks before the call thereof, and all parties are thereby put on notice that they should complete preparations to go to trial, including, as we hereinabove have indicated, ability to furnish a list of proposed testimonial witnesses after the list be published and reasonably prior to trial, unless good cause be justifiably anticipated to be shown for continuance when the list is called.

As to the last part of its third interrogatory, we believe that defendant seeks information beyond that allowed by the Rules. While plaintiff might literally comply with defendant's additional request for a statement of the "purposes" for which the proposed witnesses will be called, with the simple reply that they will tend to assist in winning his case for him, we rather doubt that such self-evident answer would be of much assistance to defendant, and we assume that the latter really seeks an indication or summary of the content of the evidence proposed to be shown by each witness respectively. Such information is far beyond that authorized by Pa. R. C. P. 4007(a), which, so far as it pertains to witnesses, is confined to discovery of their identity and whereabouts. Moreover, plaintiff's statement of a summary of their proposed testimony

would necessarily and inevitably be within the scope and contemplation of matters secured by him or those acting for him in anticipation of litigation and preparation for trial, and hence would be within the ban of Pa. R. C. P. 4011(d). If defendant be advised of the identity and whereabouts of plaintiff's witnesses, the latter has discharged his duties under the Rules with respect thereto; he is not further required to give defendant the benefit of his efforts in gathering and arranging the evidential content of their testimony, matters as to which defendant may do its own investigating. Compare Hill v. Mayusky, 32 Northumb. 35 (1959); Philber Lehigh Co. v. Canada Dry Bottling Co. of the Lehigh Valley, 17 D. & C. 2d 356 (1958); Ross v. Lister, 21 D. & C. 2d 51 (1959).

Somewhat related to this subject are defendant's interrogatories numbered 45 to 52, inclusive, which call upon plaintiff to state the specific factual basis for each of the various and respective conclusions alleged in the complaint as the several aspects of defendant's negligence relied upon for liability, such as its failure to inspect, to maintain and repair, and to warn of dangers incident to the motor-cart in question, and its lack of reasonable care in the particulars mentioned and generally. Plaintiff objects to these interrogatories on the ground that they relate to matters of which he has no knowledge, and he may not be required under Pa. R. C. P. 4011(d) to divulge the results of investigations conducted by others on his behalf in preparation of his case.

To the extent that this position be factually justified, plaintiff need not furnish this information, and defendant will be relegated to its own discovery thereof from others, subject to such restrictions as may be imposed thereon by other provisions of the Rules, such as Pa. R. C. P. 4011(f) precluding the involuntary disclosure by an expert witness of matters of his

opinion. We cannot say, however, that plaintiff should be excused from making any answer to the subject interrogatories; as to certain of them, e.g., matters of presence or absence of plaintiff's knowledge or the giving to him of warnings, instructions, or representations of safety, it would seem obvious that he should have some personal cognizance. He should be required to reply to these questions, which patently are relevant to the subject matter and will substantially aid in the preparation of the trial of the case, to the extent the answers are within his personal knowledge: Pa. R. C. P. 4007 (a) ; Sheerer v. Fender, 16 D. & C. 2d 125, 8 Bucks 316 (1958) ; Philber Lehigh Co. v. Canada Dry Bottling Co. of the Lehigh Valley, 17 D. & C. 2d 356 (1958) ; Bystrom v. Sears, Roebuck & Co., 18 D. & C. 2d 300 (1959) ; Cloder v. Horvath, 27 D. & C. 2d 180 (1962).

Plaintiff's final objection is to defendant's interrogatory no. 28. He apparently acquiesces in the first part thereof requiring him to state the amount of his gross earnings lost by reason of the accident, but contends that he should not be compelled to detail the deductions from gross pay by his employer, as sought by the latter part of this question. Although plaintiff's complaint includes an averment of loss of earnings and earning power as an alleged consequence of the accident, he argues that his take-home pay and the manner of its computation are matters which have no relevancy in these proceedings. He points out that defendant should not have the benefit of tax deductions or other withholding items, which are entirely unrelated to the issue of damages alleged to arise out of tort liability. Defendant counters, on the other hand, that plaintiff in any event should be entitled only to be made whole or to be compensated for that which he actually lost, and if taxes not be taken into account in fixing his alleged loss of earning capacity, he would enjoy a windfall,

since the jury verdict he seeks as compensation for the value of his lost earning power would not constitute income upon which taxes would be imposed. Defendant's position, frankly based upon observations of this court in Klusko v. Gaine-Murfit Chevrolet, Inc., 23 D. & C. 2d 433, 10 Bucks 145 (1960), has been obviated, however, and any previous uncertainty in the law on this score removed, by the recent decision of the Supreme Court in Girard Trust Corn Exchange Bank v. Philadelphia Transportation Company, 410 Pa. 530 (1963), announcing as a rule to be followed in the determination of earning capacity that income tax consequences should *not* be taken into consideration. Accordingly, the information sought by the second part of interrogatory no. 28 no longer has any relevancy even to the subject matter of the action, and we fail to see how it can provide any substantial aid in the preparation of defendant's case for trial.

*Order*

And now, May 24, 1963, plaintiff's objections to defendant's interrogatories nos. 3 and the latter part of 28 are hereby sustained; his objections to interrogatories nos. 45 to 52, inclusive, are hereby sustained to the extent, and overruled to the extent, indicated by the foregoing opinion.